**2014 BNH 003   Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 13-10464-JMD
                                                                                                Chapter 13
Jonathan Smolin,
             Debtor

*Mary F. Stewart*
*Mary Stewart Law, PLLC*
*2 1/2 Beacon Street, Suite 285*
*Concord, NH*

*Christopher P. Mulligan*
*Bosen & Associates, PLLC*
*96 Chestnut Street*
*Portsmouth, NH*
*Attorney for Creditor William F. Espeaignette,*
*       Personal Representative of the Estate of Frederick W. Espeaignette*

## MEMORANDUM OPINION

**I.  INTRODUCTION**

The Court has before it creditor William F. Espeaignette's[1] ("Espeaignette") Objection to Confirmation of Plan (Doc. No. 22) (the "Objection").  The Objection concerns Jonathan Smolin's (the "Debtor") chapter 13 plan (Doc. No. 6) (the "Plan"), and alleges that the Debtor filed it in bad faith because it is not an honest effort to repay creditors, but rather an attempt to thwart creditors.

The Court held a non-evidentiary hearing on the matter on September 3, 2013 (the

---

[1] As Personal Representative of the Estate of Frederick W. Espeaignette.

1

"Hearing"). After hearing oral argument from Espeaignette and the Debtor, the Court issued a scheduling order (Doc. No. 49) (the "Scheduling Order") requiring, among other things, that "to the extent either party determines that there are material factual disputes requiring an evidentiary hearing, said party must file a motion detailing the disputed factual issues on or before October 1, 2013.  Any response to such a motion must be filed on or before October 8, 2013." Neither party filed such a motion. The Scheduling Order further required each party to submit a memorandum of law on the issue of the Plan being filed in good faith on or before October 18, 2013.  Each party did so, and the Court took the matter under submission.  On October 28, 2013, the Debtor filed a response to Espeaignette's memorandum (the "Response").

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(L).

**II.  FACTS**

The following information comes from the parties' pleadings and the Court's docket. Neither party filed a motion detailing any material factual disputes requiring an evidentiary hearing.[2]  Accordingly, the Court will accept allegations of fact in the parties' pleadings as true for purposes of ruling on the Objection and the Debtor's opposition thereto.

    A.    **Espeaignette's Claim Against the Debtor**

On June 20, 2007, the Cumberland County Probate Court in Maine entered a consent

---

[2] The chapter 13 trustee appeared at the Hearing, but takes no position in this dispute.

judgment in favor of Espeaignette against the Debtor, in the amount of $210,000, plus interest at the statutory post-judgment interest rate (the "Judgment"). The underlying nature of the Judgement and the facts and circumstances that gave rise to it are not readily apparent from the parties' pleadings or the Court's docket and claims register in this case. Neither party has argued that the underlying nature of the Judgment is relevant to the issues before the Court. Espeaignette holds an unsecured claim of $295,121.62 against the Debtor. Espeaignette filed claim number 4-1 in the Court's claims register on April 9, 2013, which states "judgment" as the only basis for the claim. No party has objected to Espeaignette's claim.

### B.    The Debtor's Prior Bankruptcies

On February 14, 2008, the Debtor, along with his spouse, Dianna Smolin, filed a chapter 7 bankruptcy petition in the District of Maine (the "2008 Bankruptcy"). On December 17, 2008, the U.S. Trustee (the "UST"), with the Debtor's consent, filed a motion to dismiss the 2008 Bankruptcy with respect to the Debtor only, pursuant to § 707(a) of the Bankruptcy Code.[3] According to the motion, the UST had "cause to file an objection to discharge and the Debtors desiring to avoid the cost of litigation, the [UST and the Debtor] have come to a resolution whereby [the Debtor] will be dismissed as a Chapter 7 debtor with prejudice for two years (730 days) from the date the dismissal order becomes final."

On December 5, 2011, the Debtor filed a second chapter 7 bankruptcy petition in this

---

[3] Section 707(a) provides that a "court may dismiss a [chapter 7 case] only after notice and a hearing and only for cause, including--
  (1) unreasonable delay by the debtor that is prejudicial to creditors;
  (2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and
  (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

district (Doc. No. 11-14437-JMD, the "2011 Bankruptcy").  The Debtor filed the 2011 Bankruptcy as a single individual, without his spouse.  The Debtor's Schedules I and J in the 2011 Bankruptcy listed average monthly income of $7,755.66 and average monthly expenses of $7,245.51, resulting in monthly net income of $510.15.

On February 2, 2012, Espeaignette commenced an adversary proceeding  (Doc. No. 12-01011-LHK) against the Debtor, alleging causes of action under § 523(a)(2)(A) and (a)(6) of the Bankruptcy Code.[4]  On April 5, 2012, Espeaignette filed a motion for summary judgment in the adversary proceeding.  As part of his objection to Espeaignette's motion, the Debtor filed revised versions of his Schedules I and J in the adversary proceeding, but did not formally amend his schedules in the 2011 Bankruptcy.  Those revised schedules listed average monthly income of $7,913.76 and average monthly expenses of $8,260.18, resulting in a monthly net *loss* of $346.42.  On July 19, 2012, the bankruptcy court granted Espeaignette's motion for summary judgment as to the § 523(a)(2)(A) count, and entered a final judgment in favor of Espeaignette in the amount of $210,000 plus post judgment interest and costs.[5]

On March 7, 2012, the Court granted the Debtor a discharge in the 2011 Bankruptcy under § 727 of the Bankruptcy Code.  On August 3, 2012, the Court closed the 2011 Bankruptcy.

---

[4] Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

[5] Bankruptcy Judge Louis H. Kornreich of the District of Maine presided over the adversary proceeding by designation.

## C. The Present Bankruptcy

On January 10, 2013, the Belknap County Superior Court entered a payment order of $2,000.00 per month against the Debtor (the "Payment Order") with respect to Espeaignette's Judgment. The first payment under the order was due February 1, 2013. The Debtor did not make the February payment. According to the Debtor, "[a]lthough [he] could have filed a... Motion to Reconsider the Payment Order, he was advised that absent a change in circumstances, it was unlikely to result in a reduction of the monthly payment order."

On February 27, 2013 (the "Petition Date"), the Debtor filed the present chapter 13 bankruptcy (the "2013 Bankruptcy"). The Debtor cannot receive a discharge in the 2013 Bankruptcy because he received a discharge in the 2011 Bankruptcy within four years of the filing of the case. See 11 U.S.C. § 1328(e)(1). The Debtor has filed three different versions of his Schedules I and J, reflecting changes in his income and expenses since the Petition Date. See Doc. Nos. 1, 47, and 51. The most recent version of the Debtor's Schedules I and J (Doc. No. 51) was filed in apparent compliance with the Scheduling Order, which required the Debtor to file any further amendments to those schedules by September 17, 2013. Schedules I and J currently list average monthly income of $7,224.63 and average monthly expenses of $7,220.70, resulting in monthly net income of $3.93. Among the Debtor's expenses are $647.45 per month for the Debtor's primary vehicle (a 2012 Nissan Titan truck), $200 per month for the Debtor's 1924 Dodge Brothers antique truck, and $643.25 per month for the Debtor's spouse's primary vehicle. According to the Debtor's memorandum, he purchased the Nissan truck between the 2011 Bankruptcy and the present case. The purchase price was $34,243.95 financed over 72 months. As part of his most recent amendments to Schedules I and J, the Debtor explained a

recent decrease in his income, as well areas where he reduced or eliminated expenses. The Debtor's Form 22C indicates that he is a below median debtor, with an applicable plan commitment period of three years. See Doc. No. 1.

On March 2, 2013, the Debtor filed the Plan (dated February 26, 2013). The Plan proposes to make 60 monthly payments of $200.00, for a total of $12,000.00 over its life. The Plan proposes to pay the following claims and administrative expenses: 1) chapter 13 trustee's fees and expenses in the amount of $1,200.00; 2) attorney's fees totaling $1,995.00; 3) a disputed priority claim to the State of Maine in the amount of $6,000; and 4) an estimated pro-rata payment to unsecured creditors – which total $308,498 according to the Plan – of 3%. The Plan states that the Debtor will make payments directly to his two secured auto lenders outside the Plan.[6] After the Debtor filed the Plan, the State of Maine filed a claim, but later withdrew it.[7] See Claim No. 3-1 and Doc. No. 31. After claims objections and withdrawals, the remaining claims in the case are as follows: 1) a $33,611.81 claim by Wells Fargo Dealer Services, secured by the Debtor's 2012 Nissan Titan, which the Debtor proposes to pay outside the Plan; 2) a $1,714.88 claim by the IRS, of which $1,450.03 is entitled to priority under § 507(a)(8) of the Bankruptcy Code, according to the claim; and 3) the $295,121.62 claim by Espeaignette, which is non-dischargeable, as explained above.

---

[6] According to the Debtor's schedules, the Debtor's two auto lenders are Wells Fargo Dealer Services, on account of the 2012 Nissan Titan, and Michael Gawlicki, on account of the 1924 Dodge truck.

[7] The State of Maine also filed an objection to the Plan, but later withdrew it as well. See Doc. Nos. 15 and 32.

### D.     The Parties' Positions

Espeaignette argues that the Plan was filed in bad faith and should not be confirmed on the following grounds:

1) The Debtor has a history of filing bankruptcy to thwart Espeaignette, has never made any payments to Espeaignette on account of the Judgment, and is only using the present bankruptcy to hold off Espeaignette's collection efforts for five years;

2) The payments under the Plan are not sufficient to cover the statutory interest that will accrue on Espeaignette's Judgment, and thus Espeaignette's non-dischargeable claim will increase over the life of the Plan; and

3) The Debtor's proffered expenses include $647.45 per month for the Debtor's Nissan Titan truck, and $200 per month for the Debtor's 1924 Dodge Brothers antique truck, both of which were recently acquired, and both of which the Debtor intends to pay before his unsecured creditors.

The Debtor responds that he was unable to pay his obligations as they became due, was struggling under the weight of oppressive debt, and had two pending lawsuits at the time he filed his bankruptcy: Espeaignette's collection action, and a collection action by the State of Maine on account of a tax obligation the state asserted was a non-dischargeable trust fund tax in the amount of $113,239.00.  Essentially, the Debtor argues that he filed the present bankruptcy as an honest effort to repay his creditors to the best of his abilities, he has no unreasonable or unnecessary expenses, and his Plan satisfies the best interests of creditors test.

### III.  DISCUSSION

#### A.     Requirement of Good Faith for Confirmation Pursuant to § 1325(a)(3)

Section 1325(a)(3) provides that a chapter 13 plan is entitled to confirmation if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).  The Debtor bears the burden of demonstrating that a plan has been proposed in good faith.  <u>Sullivan v. Solimini (In re Sullivan)</u>, 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005).

In the First Circuit, good faith is determined on a case-by-case basis using the totality of the circumstances test. Id.  Courts typically consider the following factors in making such a determination:

> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief. Id. at 212, citing In re Dicey, 312 B.R. 456, 459 (Bankr. D.N.H. 2004).

Although this Court and others have provided lists of relevant factors, the inquiry is inherently fact sensitive, is done on a case-by-case basis, and may involve consideration of other factors or a more general balancing of equities.  See Sullivan, 326 B.R. at 212 (citations omitted).  "No one factor is determinative, but it is the totality of all the various factors and the facts of the particular case that is considered."  Dicey, 312 B.R. at 459.  As this Court has noted before, the requirement of good faith is ambiguous.  Id.

Debtors seeking bankruptcy relief may not "play fast and loose with their assets or with the reality of their affairs."  Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474, 478 (1st Cir. 2005) (citations omitted).  Thus, the bankruptcy court "is entitled to insist upon filings and representations made in utmost good faith."  Hannigan v. White (In re Hannigan), 409 F.3d 480, 483 (1st Cir. 2005).  The unique circumstances of this "chapter 20" case[8] warrant a careful

---

[8] When a debtor files a chapter 7 case, receives a discharge, and subsequently files a chapter 13 case, as the Debtor did here, the process is colloquially referred to as a "chapter 20." See Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 179.1, at ¶ 13, Sec. Rev. June 15, 2004, www.Ch13online.com.  When a debtor has received a discharge in a prior chapter 7 case filed within the four-year period preceding the petition date of the subsequent chapter 13 case, the Bankruptcy Code bars a court from granting the debtor a

inquiry by the Court.  In re Dolinak, 497 B.R. 15, 23 (Bankr. D.N.H. 2013).

The Court finds the following circumstances of this case relevant to a determination of good faith:

        1.        The Debtor's History of Filings

A debtor's history of filings and dismissals is relevant to a good faith inquiry.  See Sullivan, 326 B.R. at 212.  Here, the Debtor has filed three bankruptcy petitions in less than five years.  The parties did not address the specific circumstances of the 2008 Bankruptcy and its dismissal, so the Court will only consider the fact that the Debtor filed the case and agreed to its dismissal.  The Debtor filed the 2011 Bankruptcy roughly one year after the agreed-to prohibition on bankruptcy filings ended.  The time between the petition dates of the 2011 Bankruptcy and the 2013 Bankruptcy was approximately 15 months.  The Debtor may not receive a discharge in the 2013 Bankruptcy, although none of the unsecured debt in the case is dischargeable anyway.  Despite the Debtor's lack of dischargeable debt and a commitment period of only thirty-six months, the Debtor proposes a sixty month plan.

It appears that the Debtor has resorted to bankruptcy protection frequently, instead of infrequently, even when he cannot receive a discharge and does not owe any dischargeable unsecured debts.  Therefore, it appears that the Debtor's motivation in seeking bankruptcy protection is not to achieve a fresh start, but to merely control or delay payments on nondischargeable unsecured debts.

---

discharge in the chapter 13 case. 11 U.S.C. § 1328(f)(1).

2. The Debtor's Filings in Light of State Court Litigation

Whether a debtor uses bankruptcy solely as a means to defeat state court litigation is another factor relevant to a good faith inquiry. See id. Here, the Debtor filed two chapter 7 bankruptcies following Espeaignette's judgment in the state court in Maine. The Debtor filed the 2008 Bankruptcy approximately eight months after the Judgment entered. The Debtor filed the present case less than two months after the New Hampshire state court entered the Payment Order. As the Debtor acknowledges in his memorandum, there were two pending court actions against him as of the Petition Date: Espeaignette's action and an action by the State of Maine to collect a tax obligation it asserted to be non-dischargeable. The Debtor states that he could have filed a motion to reconsider the Payment Order, but elected to file bankruptcy instead. Accordingly, it appears that one of the Debtor's primary motivations in filing bankruptcy was to evade or delay his obligations under a final state court payment order without seeking a modification from the issuing court. Such actions are indicative of bad faith.

3. The Type of Debt sought to be Discharged and Whether the Debt Would be Dischargeable in a Chapter 7

The nature of the debt at issue in a case is another factor relevant to a good faith inquiry. See id. In this case, all of the Debtor's unsecured debts are nondischargeable, and the debtor is not eligible for a discharge in any event. In Dicey, a case that predates the BAPCPA amendments to chapter 13, this Court addressed a factual situation similar to the Debtor's. There, the chapter 13 debtors proposed a plan that would pay a de minimis dividend to unsecured creditors. Dicey, 312 B.R. at 459. A single creditor's claim constituted over 65% of the non-insider claims, and that creditor's claim would have been non-dischargeable in a chapter 7 pursuant to § 523(a)(6) of the Bankruptcy Code. Id. at 459-460. The Court noted that there

10

were no priority or secured creditors, other than the chapter 13 trustee's fees and debtors' attorney fees. Id. at 459. The Court held that "[t]he de minimis dividend, the fact that the debt would be nondischargeable under a Chapter 7, the fact that the case [was] in substance a one creditor case, the fact that no prepetition creditors [were] receiving any substantial payment, the fact that the only distributions [would] be to administrative creditors and the timing of the bankruptcy filing, all lead to the conclusion that the plan was not filed in good faith." Id. at 460.

In this case, the Debtor's plan would pay the IRS's priority claim of $1,450.03. Otherwise, the facts are similar to those present in Dicey, before taking into account the Debtor's bankruptcy history. Other than the IRS's claim, this is effectively a one creditor case. The Debtor's payments to Espeaignette do not constitute a substantial payment because Espeaignette's claim will grow over the life of the plan.[9] These factors are indicative of bad faith.

4. The Debtor's Expenses Relative to the Plan Payments

The Debtor's expenses, which he intends to pay in full outside the plan, include $647.45 per month for the Debtor's 2012 Nissan Titan truck, and $200 per month for the Debtor's 1924

---

[9] The parties have not argued whether the Maine or New Hampshire judgment interest rate applies. A Maine state court entered the original Judgment, but a New Hampshire state court entered the Payment Order. The applicable interest rate in Maine is the one-year U.S. Treasury Bill rate (weekly average one-year constant maturity yield, for the last full week of the calendar year immediately prior to the year in which post-judgment interest begins to accrue) plus 6%. Thus, if the Maine rate applies in this case, the post-judgment interest rate would likely be 10.99%. See ME. REV. STAT. tit. 14, § 1602-C (2013).

The applicable interest rate in New Hampshire is the prevailing discount rate of interest on 26-week U.S. Treasury bills at the last auction thereof preceding the last day of September in each year, plus 2 percentage points, rounded to the nearest tenth of a percentage point. See R.S.A. 336:1. The interest rate between 2007 and 2013 has ranged from a low of 2.0% to a high of 6.8%. See http://www.nh.gov/treasury/Tinfo/JudgmentRate.htm

Regardless of the applicable rate, at the Hearing, the parties did not dispute that Espeaignette's claim will negatively amortize over the life of the plan.

11

Dodge Brothers antique truck.  The Debtor argues that the average price for a vehicle is $31,252, and thus the Nissan truck payment is "within the range of a typical vehicle expenditure."  The Debtor's argument has no credibility.  The Debtor offers no viable evidence to support his argument.  Moreover, the Debtor offers no justification that his transportation requirements necessitate a full-size pick up truck.  He is employed as a surgical technologist.  Therefore, the Debtor has failed to provide any convincing justification to support the necessity or reasonableness for owning, and financing, an expensive truck with a monthly payment of $647.45.

Moreover, the Debtor has made no showing as to why the $200 monthly payment for his antique Dodge truck is reasonable and necessary.  The record does not disclose whether the 90 year old vehicle is operational.  However, the status of the antique truck is not material because the Debtor offers no argument that ownership of, and loan payments on, this truck are reasonable or necessary.

Chapter 13 is, at base, a bargain between debtors and creditors.  In re Klaven, 2012 Bankr. LEXIS 3286 at *3 (Bankr. D. Mass. July 18, 2012), citing In re Amos, 452 B.R. 886, 894 (Bankr. D.N.J. 2011).  Here, the Debtor proposes to pay $200 per month towards his Plan, in spite of the fact that his Schedule J shows only $3.93 in net income.  The Debtor has failed to provide a sufficient explanation for why he can afford the proposed plan payments, and failed to establish that all of his expenses are reasonable and necessary.  The Court notes that the amount the Debtor proposes to pay towards his Plan is the same amount the Debtor pays on account of his antique truck.  These factors are indicative of bad faith.

### 5. Section 1322(d) and the Creditor's Delay in Receiving Payment

The Debtor states in his Response that he "intends to pay the Espeaignette claim in full over time - a portion during bankruptcy and the remainder outside of bankruptcy." The Debtor argues that a "delay in receiving payment is not a proper consideration under § 1325(a)(3)," and cites to In re Richall, 470 B.R. 245 (Bankr. D. N.H. 2012). Richall concerned above median debtors who proposed a 60 month, 100% plan. Id. at 247-48. However, the plan payments were less than the debtors' monthly disposable income, and had the debtors dedicated all of their monthly disposable income to plan payments, they could have completed a 100% plan in approximately 30 months. Id. at 248. The Court held that the BAPCPA amendments to § 1322(d) explicitly allowed this result, and the Court lacked any authority to require above median debtors to reduce their plan term from five years, if they are paying all unsecured claims in full. Id. at 249-251.

The circumstances of this case are distinguishable because the Debtor is not proposing a 100% plan. All of the Debtor's unsecured debts are non-dischargeable, and the Debtor is not eligible for a discharge in any event. The proposed dividend in this case is minimal, and Espeaignette's claim will increase over the life of the plan, in spite of, or perhaps because of, the amount of the plan payments. Moreover, Richall was primarily concerned with the question of whether § 1325(b) of the Bankruptcy Code allowed above median debtors to pay less than their disposable income over five years, if such lower payments would pay unsecured creditors in full.

Here, the below median Debtor proposes a five year plan. Section 1322(d)(2) states that a below median debtor's plan "may not provide for payments over a period that is longer than 3 years, *unless the court, for cause, approves a longer period*, but the court may not approve a

13

period that is longer than 5 years" (emphasis added).  The Debtor has not even argued, let alone established, cause for the Court to approve a five year plan period.  The Debtor's decision to propose a five year plan – as opposed to a three year plan, as required by §1322(d)(2) – is a double edged sword.  A longer plan would ostensibly result in greater total payments to creditors.  But here, due to the relatively small plan payments, Espeaignette's claim will grow larger than it would have under a shorter plan. And the longer plan forestalls Espeaignette's collection efforts for more time.  The Debtor has made no showing as to why this is an equitable result.  Thus, the longer than required plan term is indicative of bad faith, because the Debtor is maximizing the time he can delay Espeaignette's collection efforts and the effects of the Payment Order, while failing to even pay the interest on the Judgment.

## IV.  CONCLUSION

The Debtor bears the burden of demonstrating that his Plan was proposed in good faith. Here, the Debtor has failed to establish that, under the totality of the circumstances, he filed his Plan in good faith.  Accordingly, the Court will deny confirmation of the Plan as being filed in bad faith, by separate order.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   March 17, 2014         /s/ J. Michael Deasy
                               J. Michael Deasy
                               Bankruptcy Judge